**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| KAISER GROUP INTERNATIONAL INC., | ) | |
| et al., | ) | |
| | ) | |
| Debtors. | ) | Case No. 00-02263-MFW |
| _____ | ) | |
| KAISER GROUP HOLDINGS, INC., et | ) | |
| al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 09-52317-MFW |
| | ) | |
| SQUIRE SANDERS & DEMPSEY LLP, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**[1]

Before the Court is the Motion of Squire Sanders & Dempsey,
LLP (the "Defendant") to dismiss as untimely the malpractice
Complaint filed by Kaiser Group International, Inc. ("Old
Kaiser"), Kaiser Group Holdings ("New Kaiser"), and certain other
individuals and entities who were major shareholders of Old
Kaiser[2] (collectively the "Plaintiffs").  For the reasons set
forth below, the Court will grant the Defendant's Motion to
dismiss the Complaint in its entirety.

---

[1]  In this Memorandum Opinion, the Court makes no findings
of fact and conclusions of law.  Fed. R. Bankr. P. 7052 (applying
Rule 52(a)(3) which provides that "[t]he court is not required to
state findings or conclusions when ruling on a motion under Rule
12 . . . .").  The facts recited are those alleged in the
Complaint or in pleadings filed in the bankruptcy case.

[2]  The other Plaintiffs include Michael E. Tennenbaum,
individually, Michael E. and Suzanne S. Tennenbaum as trustees
for two Tennenbaum trusts, and Tennenbaum & Co., LLC.

I.    BACKGROUND

Old Kaiser and several of its affiliates (collectively, the "Debtors") filed petitions under chapter 11 of the Bankruptcy Code in this Court on June 9, 2000.  The Debtors were authorized by this Court to retain the Defendant as counsel in the bankruptcy case.  The Defendant had previously represented Old Kaiser in corporate and litigation matters.

Prior to the bankruptcy filing, ICT Spectrum Constructors, Inc. ("Spectrum") had merged into a subsidiary of Old Kaiser. Under the merger agreement, Spectrum shareholders received 8.519 shares of Old Kaiser stock for each share of stock they held in Spectrum.  A separate "fill-up" provision of the merger agreement provided that if Old Kaiser stock was trading for less than $5.36 per share on March 1, 2001, the former Spectrum shareholders would receive additional shares or cash in the amount the shares were below that price.  The Defendant had advised Old Kaiser in the negotiation of the merger agreement.

A proof of claim (the "Spectrum Class Claim") was filed against Old Kaiser in the bankruptcy case for enforcement of the fill-up provision and for damages as a result of alleged misrepresentations.  The Plaintiffs allege that the Defendant advised them that the Spectrum Class Claim was without merit and would not result in any financial harm to the Plaintiffs.

2

The Defendant was the principal drafter of the Second Amended Plan of Reorganization (the "Plan") in the bankruptcy case.  The Court confirmed the Plan on December 5, 2000, and the Plan became effective on December 18, 2000.  Under the Plan, New Kaiser was formed for the purpose of holding the outstanding stock of Old Kaiser and the other Debtors; the stock of New Kaiser was issued to the creditors and shareholders of Old Kaiser and its subsidiaries.

Following the Plan's confirmation, the Spectrum Class filed a motion requesting that the Court decide how many shares of New Kaiser stock should be allocated to the Spectrum Class as part of its recovery pursuant to the Plan.  The Spectrum Class asserted that it was entitled to a total of 262,975 shares; the Debtors argued that the Spectrum Class was entitled at most to 31,250 shares.  On February 2, 2004, the Court entered an Order granting the motion by the Spectrum Class and determining that it was entitled to a total of 262,975 shares.  That decision was later affirmed on appeal on June 25, 2005.

More than three years later, on July 13, 2008, the Plaintiffs commenced a malpractice action against the Defendant in the Superior Court of the District of Columbia.  The Defendant removed the action to the United States Bankruptcy Court for the District of Columbia (the "D.C. Bankruptcy Court") and filed a motion to change venue to this Court.  The Plaintiffs filed a motion for

remand, or alternatively, abstention.  The D.C. Bankruptcy Court
denied the Plaintiffs' motion and granted the Defendant's motion,
thereby transferring the action to this Court on November 12,
2009.

In their Complaint, the Plaintiffs allege that the Defendant
committed professional negligence and breached its fiduciary duty
in representing them in the bankruptcy case.  The Plaintiffs'
claims are primarily based on three instances of alleged
malpractice: (1) drafting the Plan and Disclosure Statement in a
manner that was not in compliance with the Bankruptcy Code, (2)
failing to disclose and explain adequately the risks to Plaintiffs
inherent in the various legal positions taken by the Debtors
regarding the Spectrum Class Claim, (3) and needlessly increasing
legal fees through an aggressive strategy regarding the treatment
of the Spectrum Class Claim.


II.  <u>JURISDICTION</u>

As determined by the D.C. Bankruptcy Court, this adversary
proceeding falls within this Court's "arising in" jurisdiction
pursuant to 28 U.S.C. § 1334(b).  This proceeding is a core matter
pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (L), & (O).

4

III.  <u>DISCUSSION</u>

    A.  <u>Standard of Review</u>

A motion under Rule 12(b)(6)[3] of the Federal Rules of Civil Procedure serves to test the sufficiency of the factual allegations in the plaintiff's complaint.  <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993) ("The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.").  With the Supreme Court's recent decisions in <u>Bell Atlantic Corp. v. Twombly</u>[4] and <u>Ashcroft v. Iqbal</u>,[5] "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss."  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).

A claim is sufficient if it is facially plausible, that is "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 129 S. Ct. at 1949.  Determining whether a complaint is "facially plausible" is "a context-specific task that requires the reviewing court to draw on its judicial

---

[3]  Rule 12(b)(6) of the Federal Rules of Civil Procedure is made applicable to this adversary proceeding pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure.

[4]  550 U.S. 544 (2007).

[5]  129 S. Ct. 1937 (2009).

experience and common sense." <u>Id.</u> at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but not shown - that the pleader is entitled to relief." <u>Id.</u>

After <u>Iqbal</u>, the Third Circuit has instructed the courts to "conduct a two-part analysis. First the factual and legal elements of a claim should be separated. The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." <u>Fowler</u>, 578 F.3d at 210-11. <u>See also</u> <u>Iqbal</u>, 129 S. Ct. at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

The court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." <u>Fowler</u>, 578 F.3d at 211. "The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim." <u>Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.)</u>, Bankr. No. 03-12656, Adv. No. 08-50248, 2008 WL 4239120, at *4 (Bankr. D. Del. Sept. 16, 2008).

        B.   <u>The Defendant's Motion to Dismiss</u>

        1.   <u>Statute of Limitations</u>

The Defendant seeks to dismiss the legal malpractice claim,

inter alia,[6] because it is barred by Delaware's three-year statute

of limitations.  10 Del. C. § 8106 (2009).  <u>See, e.g.</u>, <u>Middlebrook</u>

<u>v. Ayres</u>, 2004 WL 1284207, *4 (Del. Super. Ct. 2004) ("It is

settled law of this State that legal malpractice actions are

governed by the three-year statute of limitations in 10 Del. C. §

8106."), <u>aff'd</u>, 867 A.2d 902 (Del. 2005).

Under Delaware law, absent concealment or fraud, the statute

of limitations begins to run at the time of the wrongful act, and

ignorance of a cause of action does not toll it.  <u>Isaacson,</u>

<u>Stolper & Co. v. Artisans' Sav. Bank</u>, 330 A.2d 130, 132 (Del.

1974).  The running of the limitations period can be tolled,

however, if the injury was "inherently unknowable and the claimant

is blamelessly ignorant of the wrongful act and the injury."

<u>Coleman v. PricewaterhouseCoopers, LLC</u>, 854 A.2d 838, 842-43 (Del.

2004).  In that instance, the statute of limitations period begins

to run upon the discovery of facts "constituting the basis of the

cause of action or the existence of facts sufficient to put a

person of ordinary intelligence and prudence on inquiry which, if

_____

        [6]   The Defendant moves to dismiss the Complaint on multiple
other grounds, including res judicata and collateral estoppel.
Because it is dispositive, the Court will limit its discussion to
the statute of limitations argument.

pursued, would lead to the discovery" of such facts.  <u>Boerger v.</u>
<u>Heiman</u>, 965 A.2d 671, 674 (Del. 2009) (<u>quoting</u> <u>Coleman</u>, 854 A.2d
at 842).  Under this theory, "a plaintiff bears the burden of
showing that the statute was tolled, and relief from the statute
extends only until the plaintiff is put on inquiry notice."  <u>In re</u>
<u>Tyson Foods, Inc.</u>, 919 A.2d 563, 585 (Del. Ch. 2007).

The Plaintiffs contend that the Complaint is timely because
the District of Columbia statute of limitations is applicable.
The statute of limitations for an action alleging legal
malpractice or breach of fiduciary duty in the District of
Columbia is also three years.  D.C. Code § 12-301(8).  When
applying that statute, however, courts in D.C. recognize the
"continuous representation rule," which tolls the statute of
limitations until the attorney ceases to represent the client in
the matter.  <u>R.D.H. Communications, Ltd. v. Winston</u>, 700 A.2d 766,
768 (D.C. 1997).  Applying the continuous representation rule in
this case, the Plaintiffs contend that the filing of the Complaint
(on July 3, 2008) was timely because they did not terminate the
Defendant's representation of them until July 13, 2005.

To determine whether Delaware's or D.C.'s statute of
limitations applies, the Court must undergo a choice of law
analysis.  <u>See, e.g.</u>, <u>In re American Metrocomm Corp.</u>, 274 B.R.
641, 659 (Bankr. D. Del. 2002).

2.    Choice of Law

a.    Federal or State Choice of Law Rules

The Defendant urges this Court to apply federal choice of law rules to this dispute, arguing that there is a clear federal policy for using federal choice of law rules.  Specifically, the Defendant asserts that the Plaintiffs' claims "arise in" the bankruptcy case, relate to this Court's policing of its fiduciaries, and are partially based on alleged defects in the Plan, which this Court confirmed.  In addition, the Defendant argues that principles of uniformity, fairness and equity warrant the application of federal choice of law rules.

Federal courts are divided on whether the federal choice of law rules or the forum state's choice of law rules apply in bankruptcy proceedings.  Compare In re Gaston & Snow, 243 F.3d 599, 605-606 (2d Cir. 2001) (using choice of law rules for forum state) with In re Lindsay, 59 F.3d 942, 948 (9th Cir. 1995) (using federal choice of law rules).  The Defendant notes that the Third Circuit has not expressly considered this issue.

Although an interest in uniformity can justify the creation of federal common law, the Supreme Court has rejected uniformity as a justification for displacing state conflict rules.  Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  See also Gaston, 243 F.3d at 606.  The Supreme Court in Klaxon also made clear that federal law may not be applied to questions which arise

9

in federal court but whose determination is not a matter of federal law.  Klaxon, 313 U.S. at 496.  See also In re Merrit Dredging Co., 839 F.2d 203, 206 (4th Cir. 1988).  The Defendant concedes that state law supplies the framework for the Plaintiffs' claims in this case.  Therefore, the Court will apply state choice of law rules because attorney malpractice is based on state law. Merrit, 839 F.2d at 206 (applying state choice of law rules to state law questions arising in a bankruptcy case in the absence of a significant federal interest).

> b.    Transferor or Transferee State Law

The Plaintiffs assert that the law of the transferor state, D.C., determines the statute of limitations that governs their claims.  See, e.g., Van Dusen v. Barrack, 376 U.S. 612 (1964) (holding that in a diversity action, when a case is transferred for the convenience of the parties, the transferee court must apply the choice of law rules that the transferor court would have applied).  "The rule assures that the 'accident' of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the court of the State where the action was filed."  Id. at 638.  See, e.g., In re Litigation Involving Alleged Loss of Cargo from Tug Atlantic Seahorse, 772 F. Supp. 707, 711 (D.P.R. 1991).

The Court concludes that <u>Van Dusen</u> is not applicable here
because this case is not a diversity case and its presence in
federal court is not an 'accident.'  As the D.C. Bankruptcy Court
found, the proceeding here fits within this Court's "arising in"
jurisdiction and by extension within federal question
jurisdiction.  <u>In re Kaiser Group Int'l, Inc.</u>, 421 B.R. 1, 7-8
(Bankr. D.D.C. 2009) (finding that the inquiries for jurisdiction
"arising in" bankruptcy cases under § 1334(b) and for federal
question jurisdiction under § 1331 are identical and thus if the
Court has jurisdiction under one, it also has it under the other.)

Further, none of the allegations in the Complaint can be
separated from the bankruptcy proceedings or the bankruptcy
court's administration of those proceedings.  <u>Kaiser</u>, 421 B.R. at
8-9.  <u>See, e.g.</u>, <u>Baker v. Simpson</u>, No. 09-3848-BK, 2010 WL
2977329, at * 2 (2d Cir. July 30, 2010) (holding that claims of
substandard representation in a bankruptcy case are subject to the
bankruptcy court's "arising in" jurisdiction because they
implicate the integrity of the bankruptcy process and are
inseparable from it);  <u>Capitol Hill Group v. Pillsbury, Winthrop,</u>
<u>Shaw, & Pittman, LLC</u>, 569 F.3d 485, 489-90 (D.C. Cir. 2009)
("Malpractice claims against court-appointed professionals
stemming from services provided in the bankruptcy proceeding are
inseparable from the bankruptcy context. . . .  Such claims
therefore fall within the bankruptcy jurisdiction of the federal

11

courts."); <u>In re Southmark Corp.</u>, 163 F.3d 925, 928-29 (5th Cir.

1999) (same) .  Accordingly, because the Court has federal

bankruptcy as well as federal question jurisdiction over the

instant action, the Court concludes that the choice of law rules

of the transferee state, Delaware, apply.

c.    <u>Delaware Choice of Law Rules</u>

To decide which state's law to apply, Delaware courts follow

the "most significant relationship" test articulated in the

Restatement (Second) of Conflicts of Laws.  <u>Travelers Indem. Co.</u>

<u>v. Lake</u>, 594 A.2d 38, 46-7 (Del. 1991) (applying the local law of

the state with the most significant relationship to the occurrence

and the parties).  The "most significant relationship" is defined

in section 145(1) of the Restatement as follows: "the rights and

liabilities of the parties with respect to an issue in tort are

determined by the local law of the state which, with respect to

the issue, has the most significant relationship to the occurrence

and the parties under the principles stated in § 6."  Restatement

(Second) of Conflict of Laws § 145(1) (1971).  Section 145(2)

provides that:

> Contacts to be taken into account in applying the
> principles of section 6 to determine the law applicable
> to an issue include:
>
>> (a) the place where the injury occurred,
>> (b) the place where the conduct causing the injury
>> occurred,
>> (c) the domicile, residence, nationality, place of
>> incorporation and place of business of the parties,
>> and

12

           (d) the place where the relationship, if any,
           between the parties is centered.

    These contacts are to be evaluated according to their
    relative importance with respect to the particular
    issue.

Id. at § 145(2).

Applying these factors, the Court concludes that the state with the most significant contacts to this action is Delaware. Because the bankruptcy case, and the actions giving rise to the alleged attorney malpractice, occurred in Delaware, the Court concludes that Delaware is the place of injury. For example, the drafting, filing and confirmation of the Plan, which is at the center of the Plaintiffs' malpractice claims, occurred in Delaware. In addition, two of the Plaintiffs, Old Kaiser and New Kaiser, were incorporated in Delaware. Finally, the relationship of the parties was centered around this Court in Delaware where Old Kaiser's bankruptcy case was filed, the Plan was confirmed and the Spectrum Class Claim was determined. Indeed, the retention order describing the scope of the relationship of the parties was entered in Delaware by this Court.

Therefore, the Court concludes that under Delaware's choice of law rules, Delaware is the state with the most significant relationship to the malpractice claims articulated in the Plaintiffs' Complaint and its law should be applied.

        3.    Application of Delaware's Statute of Limitations

In this case, the Plaintiffs filed suit on July 3, 2008.

13

Therefore, the issue is whether the injury occurred prior to July 3, 2005, within Delaware's three-year statute of limitations.

The Defendant asserts that the Plaintiffs' claims relating to the drafting of the Plan and Disclosure Statement clearly occurred outside the statute of limitations period because the Plan itself was confirmed by this Court on December 5, 2000. Regarding the Plaintiffs' claims relating to the failure to disclose and explain adequately the risks inherent in the various legal positions the Defendant recommended with respect to the Spectrum Class Claim, the Defendant asserts that the injury became known to the Plaintiffs no later than February 2, 2004, when the Court decided that issue. Therefore, according to the Defendant, all of the Plaintiffs' malpractice claims are barred by Delaware's three-year statute of limitations.

The Plaintiffs assert in general that the Complaint is timely under the Delaware statute of limitations because they were not on inquiry notice of the Defendant's failure to comply with the applicable standard of care, and thus, the statute did not begin to run. (The Plaintiffs do not suggest when the statute of limitations in Delaware began to run.)

The Court concludes that the Plaintiffs' claims are time-barred under the Delaware statute of limitations. In the Complaint, the Plaintiffs allege that the Defendant committed legal malpractice by mishandling the Spectrum Class Claim and in

14

drafting the Plan and Disclosure Statement.  The Plaintiffs assert

that the Defendant was negligent in drafting the Plan and

Disclosure Statement because it improperly classified the Spectrum

Class Claim and failed to disclose adequately the potential risks

posed by the Spectrum Class Claim to Old Kaiser and its equity

holders.[7]

Although the Defendant contends that the malpractice with

respect to the drafting of the Plan and Disclosure Statement must

have arisen no later than the Plan's confirmation, the Court

disagrees.  The crux of the Plaintiffs' allegations are that they

were misled into believing that they would win the Spectrum Class

Claim litigation and that, therefore, that Claim would not be

entitled to a distribution under the Plan that diluted the equity

holders' claims.  The Court concludes that the Plaintiffs could

not know the extent of their dilution until the Spectrum Class

Claim was determined.  However, the Court finds that the

Plaintiffs learned the full extent of that dilution on February 2,

2004, the date the Bankruptcy Court granted the motion to resolve

---

[7]  Initially, the Plan classified the Spectrum Class Claim
as a general unsecured claim, but upon motion by the Debtor, it
was subordinated to the general unsecured claims and classified
as an equity claim.  11 U.S.C. § 510(b).  The Plaintiffs allege
that they were damaged because the Spectrum Class Claim should
have been separated into two separate claims (one for the stock
they owned and one for the fill-up claim) and should not have
been classified in the same class as equity claims.  They contend
that the failure to do so resulted in dilution in value of the
stock issued to other holders of equity claims under the Plan.

15

the Spectrum Class Claim and determined they were entitled to a total of 262,975 shares. Therefore, the Court concludes that any harm resulting from the Defendant's failure to disclose those risks in the Plan and Disclosure Statement occurred and was known by that date. Similarly, the Plaintiffs' legal malpractice claim for failure to explain the risks inherent in the various legal positions the Defendant recommended that Old Kaiser take regarding the Spectrum Class Claim was known to the Plaintiffs no later than February 2, 2004, the date the Court decided the merits of the Spectrum Class Claim. The Plaintiffs were on notice on that date of the outcome of the litigation strategy pursued by the Defendant (which is alleged in the Complaint to be erroneous and negligent).

The Court also finds that it is inappropriate to toll the statute of limitations in this case. Under Delaware law, tolling is appropriate only if the injury was "inherently unknowable" and the plaintiff was "blamelessly ignorant." Coleman, 854 A.2d at 842. Even if the statute was tolled, it would begin to run upon the discovery of facts "constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery" of such facts. Id. Once the Plan became effective and the Spectrum Class Claim was allowed, the other equity holders knew the extent to which their claims were diluted. Thus, all facts were known to the Plaintiffs by

16

February 2, 2004, which should have put them at least on inquiry

notice and which, if pursued, would have led to the discovery of

the alleged attorney malpractice.  Id.  See also Tyson Foods,

Inc., 919 A.2d at 585 ("No sanctuary from the statute will be

offered to the dilatory plaintiff who was not or should not have

been fooled.").

Accordingly, the Court concludes that the Plaintiffs had

three years from February 2, 2004, to bring their legal

malpractice action.  The suit was filed July 3, 2008, beyond the

Delaware three-year statute of limitations and is, therefore,

time-barred.  Dismissal of the Complaint in its entirety as

untimely is mandated.


IV.  CONCLUSION

For the reasons set forth above, the Court will grant the

Defendant's Motion to dismiss with prejudice.

An appropriate order is attached.


Dated: August 17, 2010        BY THE COURT:


                              _____
                              Mary F. Walrath
                              United States Bankruptcy Judge


                              17